Irene Cecelia Moden
c/o Twelve Forty Nine Racine St.
Aurora, Colorado [80011]
303/364-8210
imoden1959@aol.com

In Pro Per

UNITED STATES BANKRUPTCY COURT

DISTRICT OF COLORADO

In Re:

**IRENE CECELIA MODEN**

      Debtor.

) **Case No.: 14-11107-HRT**
)
) **DEBTOR IN POSSESSION IRENE**
) **CECELIA MODEN'S OPPOSITION TO**
) **GREEN TREE HOME SERVICING,**
) **LLC.'S MOTION FOR RELIEF FROM**
) **STAY**
)
)
) Date: May 20, 2014
) Time: 1:30PM
) Place: Courtroom B
) Judge: HOWARD TALLMAN

TO: THE HONORABLE HOWARD TALLMAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE MOVING PARTY AND ALL OTHER PARTIES IN INTEREST:

    Debtor in possession, **IRENE CECELIA MODEN**, hereby **opposes** and **objects** to the **Motion** for **Relief From Stay** filed by Green Tree Servicing, LLC. (hereafter "GT") as follows:

**I**
**INTRODUCTION**

    This is yet another example of the ongoing fraud by the "Too Big to Fail Banks." Movant, Green Tree Servicing LLP ("Green Tree") and its attorneys, concealed the fact that there was "Robo-signing" involved (false and unauthorized signatures on key documents.) Courts all over the country have established standards of strict scrutiny and strict interpretation of the rules of evidence because

---
1
MEMORANDUM IN SUPPORT OF OBJECTION TO CLAIM

of the pernicious and pervasive fraud.[1]  Higher level standards of proof are strictly enforced.

## II.
## GREEN TREE SERVICING IS NOT THE REAL PARTY IN INTEREST AND, THEREFORE LACKS STANDING TO BRING THIS MOTION

Rule 17(a) of the Federal Rules of Civil Procedure provides that every action "shall be prosecuted in the name of the real party in interest." Rule 17(b) of the Federal Rules of Civil Procedure provides that the party filing the action must have the "capacity to sue or be sued." Here, GT is not the real party in interest and therefore has no standing to bring this Motion against Debtor.

In order to determine whether GT has standing and is entitled to relief under Section 362, it is necessary to consider who is entitled to enforce the Note under the substantive law that governs those rights, i.e., Colorado law.

Pursuant to C.R.S. § 38-38-101, the lender is required to submit to the Public Trustee, among other things, the "original evidence of debt" (the promissory note) or one of the following as a substitute for the original promissory note: (i) a corporate surety bond in the amount of one and one-half times the face amount of the original note, (ii) a certified copy of the note, or (iii) a certified copy of a monetary judgment entered by a court. Accordingly, to foreclose on a property in Colorado under this statute, a lender is not required to provide the Public Trustee with the original promissory note as long as it can provide one of the three alternatives. Thus, the "produce the note" defense provides very little protection to borrowers in standard foreclosure proceedings conducted through the Public Trustee's office.

///

///

---

[1] The court can take judicial notice of this, given it is so well known and beyond reasonable dispute. FRCP Rule 201.

## ARGUMENT
## GT DOES NOT HAVE STANDING TO MAKE A CLAIM

Debtor disputes the validity of this Corporate Assignment of Deed of Trust (hereafter "ADOT") and alleges that no legal transfer of any interest under the Deed of Trust (hereafter "DOT") or Note to Moving Party ever on the following grounds: the ADOT was over three years after the demise of Countrywide ("Closing Date") of on or about September 30, 2008; MERS as nominee for Countrywide, purportedly recorded the ADOT of the subject loan to Moving Party when Countrywide was no longer a member of MERS, and, in any event, more than 3 months after Countrywide was no longer doing business in any manner, and further, the ADOT was executed by Heather Liebowitz, a known "robo-signor".

Liebowitz does not hold the position of "Assistant Secretary" of MERS, which is located in Virginia. Liebowitz has come to be known as a "robo-signer" - an individual who simply signs thousands of foreclosure documents on behalf of several different entities without any personal knowledge or corporate authority. Liebowitz was never, in any manner whatsoever, appointed by MERS, as an "Assistant Secretary".

Contrary to her statement in the ADOT, Liebowitz did not have the requisite authority to sign on behalf of MERS or Countrywide, had no personal knowledge of the facts involved in the ADOT, has never seen or learned whether the Loan was actually ever assigned, never viewed the Note securing the DOT, and never obtained a Declaration of Default from any entity.

The securitization information (i.e., the Trust which the loan was dropped into when it was allegedly assigned to MERS, and possibly prior to that) is unknown to Debtor at this time but on information and belief, Debtor is informed and believes that it was impossible to track this loan and the original signed loan documents. In any event, GT could not possibly have the original loan documents signed by Debtor and if they do, the original loan documents should be presented both to

the Court and the Debtor.

States have enacted laws to try and prevent this. In fact, Green Tree presented no valid evidence at all that it was authorized to collect the loan or foreclose because it wasn't. Worse, the investors in the very trust established in securitization ("Trust"); the very same ones Green Tree and its attorneys claim to be trying to collect the subject loan for, are suing the securitizing parties and the true servicers who were supposed to collect the loan. Also, the Federal Housing Finance Agency (FHFA) has sued them for fraud. The only documents submitted were the original promissory note and deed of trust. Without even submitting an affidavit or other proof, Green Tree merely stated in their moving papers that Green Tree was assigned the right to service the loan. No such assignment was provided.

There are so many lawsuits by the investors and government agencies involving the Trust into which the Debtor's loan was allegedly pooled, they cannot all be listed. Some have been settled, and the Debtor's loan has probably been paid off, at least in part.

Per the usual procedure, Green Tree incriminates itself. It claims to be acting for the Trust. As mentioned, this is impossible since the investors have sued the Trust and its related parties, including the services regarding this Trust, and the Trust is void. (See *Federal Finance Housing Agency v. UBS America, Inc.*; United States District Court for the Southern Dist. of N.Y. #11-civ-5201; *National Credit Union Administration Board v. UBS Securities LLC, et al.*, United States District Court for the District of Kansas, #12-cv- 2591. In those cases the investors in the Trust, which Green Tree claims to be acting for ("MASTR Adjustable Rate Mortgages Trust 2007-1") are listed in the RMBS trusts covered by the litigation. Other attorneys and parties claim to be representing the investors rather than Green Tree.

The promissory note was made payable to COUNRTYWIDE HOME LOANS. No recorded document suggests that it has been endorsed to GT or any other named entity. The Deed of Trust states that Mortgage Electronic Registration Systems, Inc. (hereafter "MERS") is the beneficiary of it. No validly recorded document suggests that MERS transferred its beneficial interest to GT. Transfers of mortgage paper may be made outright (sale) or by pledge (as security for a loan to the transferor). In either event, to perfect the transfer, the transferor should physically deliver the note to the transferee. Without a physical transfer, a sale of the note could be invalidated as a fraudulent conveyance (under the Uniform Fraudulent Conveyance Act), and a transfer in pledge could be invalidated as unperfected (under Colorado Com. Code §§ 4-9-313 & 4-9-314). One without a pecuniary interest in the Mortgage Loan is not an obligee under the debt and, thus, has no legal standing to foreclose *ab initio.* (Watkins v. Bryant (1891) 91C 492, 27 P 77).

The Note is not a bearer instrument, but is an instrument payable to a specifically identified person. C.R.S. Colorado Com. Code section 4-3-109 states:

(a) A promise or order is payable to bearer if it is any of the following:

(1) States that it is payable to bearer or to the order of bearer or otherwise indicates that the person in possession of the promise or order is entitled to payment.

(2) Does not state a payee.

(3) States that it is payable to or to the order of cash or otherwise indicates that it is not payable to an identified person.

(b) A promise or order that is not payable to bearer is payable to order if it is payable (1) to the order of an identified person or (2) to an identified person or order. A promise or order that is payable to order is payable to the identified person.

(c) An instrument payable to bearer may become payable to an identified person if it is specially endorsed pursuant to subdivision (a) of section 3205. An instrument payable to an identified person may become payable

MEMORANDUM IN SUPPORT OF OBJECTION TO CLAIM

to bearer if it is endorsed in blank pursuant to subdivision (b) of section 3205.

A promissory note that is payable to a specifically identified person is not transferred merely by possession; instead, transfer requires that it be endorsed. C.R.S. Colorado Com. Code section 4-3-201 states:

(a) "Negotiation" means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder.

(b) Except for negotiation by a remitter, if an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder. If an instrument is payable to bearer, it may be negotiated by transfer of possession alone.

An endorsement is not made by purchasing a note, or by purchasing a debt, or by an assignment, instead, an endorsement is made by the signature of the specifically identified person to whom the note is owed. C.R.S. Colorado Com. Code section 4-3-204 states:

"Endorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument, )(2) restricting payment of the instrument, or (3) incurring endorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than endorsement. For the purpose of determining whether a signature is made on an instrument, a paper affixed to the instrument is a part of the instrument.

(a) "Endorser" means a person who makes an endorsement.

(b) For the purpose of determining whether the transferee of an instrument is a holder, an endorsement that transfers a security interest in the instrument is effective as an unqualified endorsement of the instrument.

(c) If an instrument is payable to a holder under a name that is not the name of the holder, endorsement may be made by the holder in the name stated in the instrument or in the holder's name or both, but signature in both names may be required by a person paying or taking the instrument for value or collection.

If one bought a note and intends to enforce it, but the note does not carry the endorsement of the payee, that person can bring an action in court to specifically enforce the right to an endorsement. Then, once that is done, the creditor can enforce the note against its maker. C.R.S. Colorado Com. Code section 4-3-203 states:

(a) An instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument.

(b) Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument.

(c) Unless otherwise agreed, if an instrument is transferred for value and the transferee does not become a holder because of lack of endorsement by the transferor, the transferee has a specifically enforceable right to the unqualified endorsement of the transferor, but negotiation of the instrument does not occur until the endorsement is made.

(d) If a transferor purports to transfer less than the entire instrument, negotiation of the instrument does not occur. The transferee obtains no rights under this division and has only the rights of a partial assignee.

Stay-relief requests are governed by FED. R. BANKR. P. 4001(a)(1), to which FED. R. BANKR. P. 9014 is applicable. Rule 9014, in turn, incorporates Rule 7017. Which makes FED. R. CIV.P. 17 applicable ("[a]n action must be prosecuted in the name of the real party in interest"). The standing doctrine "involves both constitutional limitations on federal-court

jurisdiction and prudential limitations on its exercise." *Kowalski v. Tesmer,* 543 U.S. 125, 128-29, 125 S. Ct. 564, 160 L. Ed. 2d 519 (2004) (quoting Warth v. *Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L. Ed. 2D 343 (1975)). Constitutional standing under Article III requires, at a minimum, that a party must have suffered some actual or threatened injury as a result of the defendant's conduct, that the injury be traced to the challenged action, and that it is likely to be redressed by favorable decision. (<u>Valley Forge Christian Coll. V. Am. United for Separation of Church and State,</u> 454 U.S. 464, 472, 102 S. Ct. 752, 70 L. Rd. 2d 700 (1982) (citations and internal quotations omitted)). Beyond the Article III requirements of injury in fact, causation, and redressibility, the creditor must also have prudential standing, which is a judicially-created set of principles that places limits on the class of persons who may invoke the courts' powers. (*Warth v. Seldin,* 422 U.S. 490, 499, 95 S> Ct. 2197, 45 L. Ed. 2d 343 (1975)). As a prudential matter, a plaintiff must assert "his own legal interests as real party in interest". (*Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004), as found in FED. R. CIV. P. 17, which provides "[a]n action must be prosecuted in the name of the real party in interest.")

   *In re Mitchell*, Case No. BK-S-07-16226-LBR (Bankr.Nev.3/31/2009) (At page 10) the court found "MERS does not have standing merely because it is the alleged beneficiary under the deed of trust. It is not a beneficiary and, in any event, the mere fact that an entity is named beneficiary of a deed of trust is insufficient to enforce the obligation." In *In re Maisel*, the Bankruptcy Court for the District of Massachusetts found that a lender did not have standing to seek relief from the automatic stay because it did not have an interest in the property at the time it filed its motion for relief. 378 B.R. 19, 22 (2007) "Where the mortgage has 'transferred' only the mortgage, the transation is a nullity and her 'assignee', having received no interest in the underlying debt or obligation, has a worthless piece of paper." (4 RICHARD R. POWELL, POWELL ON REAL PROPERTY, § 37.27[2] (2000); <u>In re Mitchell</u>, Case No. BK-S-07-16226-LBR (Bankr. Nev. 3/31/2009) (At page 12) MERS website admits at pages 10, 20, 22, 26, 34, 38, 40, 42, 44, 46, 62, 68, 72, 76, 78, 88, 89, 99:

///

///

MERS stands in the same shoes as the servicer to the extent that it is not the beneficial owner of the promissory note. An investor, typically a secondary market investor, will be the ultimate owner of the note.[2]

## CONCLUSION

Alleged creditor GT does not demonstrate any document to support its claim that it has standing to enforce the promissory note and deed of trust. Debtor contends that the real party in interest has not come forward and the alleged creditor lacks standing. Therefore the relief from stay should be denied.

Date: May 12, 2014

*Irene Cecelia Moden*

Irene Cecelia Moden, Pro Per

---

[2] Even though the servicer has physical custody of the note, custom in the mortgage industry is that the investor (Fannie Mae, Freddie Mac, Ginnie Mae or a private investor) owns the beneficial rights to the promissory note. In consolidated cases of In re Foreclosure Cases, 521 F. Supp. 2D 650, 653 (S.D. Oh. 2007), a standing challenge was made and the Court found that there was no evidence of record that New Century ever assigned to MERS the promissory note or otherwise gave MERS the authority to assign the note. Beginning with this case, courts around the country started to recognize that MERS had no ownership in the notes and could not transfer an interest in a mortgage upon which foreclosure could be based.

9
MEMORANDUM IN SUPPORT OF OBJECTION TO CLAIM

## CERTIFICATE OF MAILING

This is to certify that I, __JANET M. STAYTON LINK__, mailed a copy of the Objection to Claims and Opposition to Green Tree's Motion for Relief of Stay to the following individuals for Irene Moden.

Mailed off on __5-12-2014__, via United States Postal Service to the following:

Anne-Marie Vos
Attorney for Green Tree Servicing, LLC.
13111 E. Briarwood Avenue
Suite #340
Centennial, Colorado 80112

Aronowitz & Mechlenberg. LLP
Attn: Bankruptcy Correspondence
1199 Bannock Street
Denver, Colorado 80204